(Preble Co., O., Court of Common Pleas.)

M. J. LALLY v. H. H. FARR, Assignee of J. A. Gruver.*

---

L. commenced his suit in the court of common pleas against G. to recover damages against G. for debauching L.'s wife and alineating her affections; after the beginning of such suit, G. made an assignment for the benefit of his creditors. L. proceeded with his suit and recovered a judgment against G.; afterwards L. probated and presented such judgment to the assingee of G. for allowance and participation in the distribution of the assets of G's estate, which claim was rejected by the assignee. Held, That L. was, at the time of the assignment of G., a creditor of G's and entitled to prove his judgment and share in the distribution so recovered against G's estate.

---

FISHER, J.

This cause is submitted to the court on an agreed statement of facts.

From this statement it appears that on May 16, 1896, Lally, the plaintiff in this case, commenced in this court an action to recover damages against the defendant's assignor, J. A. Gruver,

*This cause on error to circuit court was affirmed.

for debauching his wife and alienating her affections; that shortly after the commencement of the suit, to-wit, June 23, 1896, Gruver being insolvent, made an assignment to the defendant, Farr, for the benefit of his creditors; that on the 6th day of December, 1896, the plaintiff recovered a judgment for the sum of $1800.00 against Gruver; that after the recovery of said judgment, the plaintiff probated and presented the same to the said Farr, as such assignee, for allowance and participation in the distribution of the assets of said insolvent; that on the 27th day of May, 1897, the claim was rejected as not a valid claim against said estate of Gruver, and not entitled to participation in the distribution thereof.

The contention is, is the judgment recovered by Lally against Gruver after his assignment, such a claim as may be proved against the assigned estate, and share in the distribution of the same?

It is maintained by counsel for the assignee that it is not such a claim; that at the time Gruver made his assignment, Lally's claim was one for unliquidated damages, arising not out of breach of contract, but out of a personal tort—a violation of Lally's personal rights or feelings; that the relation of debtor and creditor did not exist between Lally and Gruver until after judgment was entered upon the record, and hence was not a debt existing at the time of the assignment and therefore not entitled to share in the assigned estate.

At first impression the question seems to involve but little difficulty, but on examination it is not without serious difficulty; much doubt surrounds its solution; and the court is left to declare a precedent from an analysis of our insolvent debtors' act, aided by the discussion of courts of other states where construction is given to the words, "debtor" and "creditor," under kindred statutes.

It is true, as claimed by counsel for the assignee, that the administration of insolvent estates is regulated by statute The object of the statute is to secure an equal distribution of an

insolvent estate among all his creditors. By this statute, jurisdiction over insolvent estates is given to the probate court, and it is argued that before the probate court could acquire jurisdiction, it must be made to appear affirmatively that the person for whom an assignee or trustee is sought, is insolvent; that this being a jurisdictional fact, a person having no other debts, save an unliquidated claim for damages for a personal tort, could not be said to be insolvent until such damages should be determined. Hence, a demand for damages for a tort does not become a claim within the meaning of our statute, until after judgment, and when an assignment is made for the benefit of creditors before such judgment, such judgment cannot be proved, as the person holding the judgment was not a creditor at the time of the assignment. Under the bankrupt law such right of proof was denied. This holding was clearly right, as is apparent from the reading of the statute. Our statute is not, however, so clear and explicit.

In determining the law of this case, the purpose, object, and intent of the statute must be considered and should have great weight in the formation of a conclusion.

In order that an assignment may stand it must be for the benefit of all creditors.

The assignment of Gruver was a voluntary assignment, conveying, in the words of the deed, to H. H. Farr as trustee, his property "in trust for the benefit of all his creditors."

The sections of the statute having special reference to voluntary assignments, and directly involved in the consideration of this case, are, sections 6335, 6338, 6349, 6352 and 6354; and the question is, did the legislature use the word "creditor", as it appears in these sections, in its limited or literal sense, as "one who voluntarily trusts or gives credit to another for money or other property?" Or did they use it in its more general or extensive sense, as "one who has a right to recover money of another on any account whatever?"

Did they use the words, "debt,"

"liability," "claim," as synonyms, and in the strict, literal sense of the word "debt," as "a sum of money due to another under express contract?" Or each in their more general sense, as "any existing demand due from one person to another, or on any account whatever?"

Judge Ranney, in the case of Harkrader v. Leiby, 4th Ohio St., 600, says: "The statute is of a most beneficial character, and the uniform language of the courts has been that it ought to receive a most liberal construction. It promotes justice and equity by compelling an equal distribution of the effects of an insolvent debtor among those equally entitled."

Judge Ranney's remarks had reference, more particularly, to what are now sections 6343 and 6344; but they are not without force as applied to our entire insolvent debtors' act.

Counsel for the defendants claim that the terms "creditor," "debtor", "claim," "liability," as used in these sections of the statute, include only debts, claims, and liabilities arising from contract express or implied, or reduced to judgment at the time of the assignment, and which at the time are definite and certain in amount, or which can, by calculation, be reduced to a certainty; for, as is argued, if these terms are to be given a wider import so as to embrace causes of action founded on mere personal tort, such as assault and battery, slander, and seduction of wife, as in this case, then it is plain that several provisions of the law strangely misfit. Can this construction be maintained?

The word "creditors," as used in the first section of the chapter, section 6335, is used without words of limitation, and apparently in its general and comprehensive sense.

5th A. & E. Encl., 179, the word "creditor," is defined in its general and more extensive sense, as "one who has a right to recover money of another on any account whatever."

Stanley v. Ogden, 2 Root, Conn., 261; 4th A. & E. Encl., 573 & note.

The word is defined in the Century Dictionary as "one to whom any return is due or payable."

Is there anything within the spirit, the letter, or reason of the law, that would require a more specific meaning?

It is claimed that sections 6338, 6347, 6349, 6350h, 6352 and 6354 clearly show that a strict legal sense was intended in the use of the words.

Section 6338 provides, among other things, "that when any creditor or creditors of the assignor shall file a complaint alleging that the assignee * * * named, is not a suitable person to administer the trust * * * to the best interests of the creditors * * * the court shall issue a citation to such assignee * * * . And if on hearing * * * it be made to appear that such complaint is true, and a petition is filed in the court, signed by creditors of the assignor who own not less than one thousand dollars of debts against the assignor, and the validity of such debts is shown by the schedule of debts on file in the court, or otherwise established to the satisfaction of the court, praying for permission to elect a trustee * * * the court should fix a time for such election and cause notices * * * to be sent * * * to each of the creditors, specifying the time when the creditors shall meet * * * and if creditors representing fifty per cent., or more, of the debts of the assignor, are present * * * they may proceed to an election of a trustee, * * * a majority of all the debts so represented, being necessary to a choice; and the proceedings * * * showing what creditors were present * * * and the amount of the debts held by them respectively * * * who cast the several votes * * * shall be filed with the court * * * . Provided that the summary determination of the court as to who are creditors, and the amount of their claims in this section, shall have no effect as to the validity of such claims, except for the purpose of such election."

I take it that this section provides for a special proceeding—for the displacement of the assignee appointed by the insolvent, and the election of a new trustee; and that it has no force other than to fix what class of creditors may sign the petition, and who may vote at such election, and the ruling of the court has no force except for the purpose of the election.

A person having an unliquidated claim for damages against the insolvent for breach of contract existing before the assignment, as where a servant employed for a year is wrongfully discharged and brings suit to recover his damages, could not sign the petition, or vote at such an election. Yet, it is settled by the great weight of authority that such a claim is a debt within the meaning of the statute, and that the holder is a creditor.

So a person having an unliquidated claim for damages against the insolvent, for injury to his personal property, as for the over-driving and injury to his horse, existing before the assignment, could not sign the petition or vote at such an election. Yet it will not be denied in the face of many authorities, that such claim is a liability within the meaning of the statute, and that the holder is a creditor, and after recovering of a judgment, it is a debt entitled to be proved against the assigned estate and share in the estate undistributed.

Zinn v. Ritterman, 2 Abb. Pr., N. S.; 5th A. & E. Encl., 149, note.

The same is true as to a person having a demand for damages, for personal injury arising from an assault and battery, existing before the assignment. He cannot sign or vote. His claim could not be scheduled, except as a liability, if suit brought, nor could the amount be fixed by the probate court. Yet, it will hardly be questioned that such a claim after judgment, becomes a debt and may be proved; the claim being an existing claim subject to present liquidation, needing only the intervention of a court and jury to fix the amount, which relates back to the time of committing the battery. True, these causes of action survive to the representatives of the person entitled, and against the representatives of the persons liable therefor. Is there any reason why the rule should be different in

causes of action for personal torts which do not survive?

In section 6343 it is provided: " * * * The assignee * * * shall file a schedule of all the debts and liabilities of the assignor within his knowledge, * * * which schedule shall contain the post-office address of such alleged creditors * * * .

It will be observed that the words used are "debts and liabilities of alleged creditors." The word "debt," and the word "liability" are not synonymous, and they are not commonly so understood. "Liability" is a term of broader significance than "debt". Liability is the state of "one who is bound in law and justice to do something which may be enforced by action." This liability may arise from contracts, either express or implied, or in consequence of torts committed. Bouv. Law Dic.

Did the legislature recognize this distinction in the significance of the words, or were they guilty of tautology in using two words in immediate connection, understood by them to be synonymous, expressing the same meaning—the same idea? Looking at the object of the insolvent act, would it not best answer the intent of the act of the legislature, to say they did, in the use of the words, recognize the difference in their meaning, and that the word "liability" was used advisedly?

When the legislature undertook to lay down the duties of assignees in making this schedule, it must be supposed that it was their intent to direct them as to two classes, debts and liabilities. The use of the word "and" indicates this— liabilities covering a large class of important claims that would otherwise be totally unprovided for. Frazer v. Tunis, 1 Binn. (Pa.,) 254; 5 A. & E. Encl., 146, 147, 160, and notes.

Under this section, would an assignee be warranted in not scheduling a liability founded upon an action against his assignor for damages growing out of a tort? Such alleged creditor must refer to one having such debts or demands.

The provisions of section 6349 are special. And I take it that "any creditor", as used in that section, means one whose legal status has been fixed by allowance or by action—certainly a creditor whose claim had been disallowed would have no standing; yet when allowed, he would be entitled to share in the estate. So in section 6350h.

Section 6352 provides for the presentation of claims, and their allowance or rejection. "Creditors shall present their claims within six months * * * for allowance." This section gives no other relief than that the assignee allow the claim. Clapp et al. v. Banking Co., 50 Ohio St., 534.

And the failure of the claimant or creditor to present his claim within six months, does not bar him from presenting it afterwards and sharing in the undistributed assets. Owens v. Randall, 33 Ohio St., 439.

Section 6354 provides what shall be done by the creditor before his claim can be allowed, or any payments made thereon. "Every person presenting and filing a claim against the estate of the debtor, and before the same shall be allowed * * * shall make and file an affidavit setting forth that the claim is just and lawful * * * .

In these two sections, the word "claim" is used, and I see nothing in them that in terms or by inference limits the meaning of the word "creditor" to one who had, at the time of the assignment, a liquidated, fixed demand in amount.

True, the cause of action in this case was one which did not survive. Nevertheless, it was a liability—a demand—a good cause of action existing in favor of Lally and against Gruver before his assignment, subject only to be extinguished by the death of Lally or Gruver; capable, however, of present liquidation, and needing only the intervention of a court and jury to fix the amount of the liability. The court having ascertained the amount of the liability, it made the indebtedness of Gruver, the tort feasor, to Lally, certain and absolute, as of the date of the commission of the tort.

Waite, in his work on Fraudulent

Conveyances, Par. 90, page 140, says: "That a person whose claim arises from a tort, such as libel and slander, is a creditor. The date the tort or injury was committed governs in determining the creditor's status * * * ." In support of this doctrine he cites numerous authorities. Notes 1 & 2.

In the case of Carver v. Bailtree Manufacturing Co., 2 Story, 432, suit for alleged infringement of patent, one Edson was excluded as a witness on the ground that he was interested in the event of the suit. He was a stockholder at the time of the alleged infringement, but he had sold his stock before the action was brought. Story, Judge, on page 451, says: "I followed the case of Milldam Foundry v. Hovey, which, as far as it goes, disclaims the interpretation of the word "debt" as limited to the contracts for the payment of determinate sums of money. Passing that line, it does not seem to me to be easy to say that if cases of unliquidated damages be treated as debts, because they end in the ascertainment of a fixed sum of money, we are at liberty to say that the doctrine is not equally applicable to all cases of unliquidated damages, whether arising ex contractu or ex delicto. If ultimately it ends in a debt as judgment for damages done, that case asserts that its character as debt relates back to its origin. Besides, it seems to me to be reasonable in practice, if not absolutely justified by authority, to hold that if the transaction occurs while he is a member of the corporation, and he would, if he remain a member, be liable for the ultimate debt adjudged, it may well be treated as an inchoate debt consummated by judgment."

In The Estate of Wilcox, 11 N. Y. Civ. Prac. Reps., 115, the court say: "The word 'debt', as used in the New York code of civil procedure, relating to the sale of a decedent's lands for the payment of his debts, includes any claim or demand upon which a judgment for a sum of money, or directing the paymen of a sum of money, can be recovered in an action; and the word 'creditor' includes any person having such a claim or demand."

In the case of Smith v. Omans, 17 Wis., 395, where the question was, whether the homestead of a judgment debtor was liable to be forced to sale, on execution, where the judgment was rendered in an action of tort, the court said: "We are fully satisfied that it is not, but that the spirit and object, as well as the letter of our constitutional and statutory provisions on the subject, exempt the homestead from sale on a judgment in a civil action. The principle argument to the contrary is based upon the words 'debt' and 'debtor,' and 'contracted', in the constitution and statute. The latter provides that the homestead shall not be liable to forced sale for any debt or liability contracted after the 1st day of January in the year 1849. It is said that the word 'debt' includes only that which is owed upon an agreement, and if there were any doubt about that, the use of the word 'contracted' removes it, and shows that the intent of the legislature was to include only debts founded upon contract. But this is giving to these words a much narrower sense than that in which they were absolutely used, for the word 'liability' used in conjunction with the word 'debt' is broad enough to include all claims whether founded upon tort or contract, and although there may be a technical distinction between 'debt' and 'damages', still 'debt' itself, is commonly and generally used to describe all obligations to pay money, whether arising from contract or imposed by law as compensation for injuries. And in this general sense the word was evidently used in this statute, and the word 'contracted' does not mean, founded upon a contract, but it was used in its more general sense, as equivalent to 'incurred'. This seems very obvious for the reason that wherever the legislature intends to express the idea which the respondent claims they intended to do here, they use different language clearly appropriate to the end.

Thus, in the constitution itself, sec. 16, art. 1, it is provided that no person shall be imprisoned for debt aris-

ing out cf, or founded upon contract express or implied. This clearly implies that there may be debts not founded upon contract; yet there are none, according to the argument cf the respondent, and this provision would have had no greater effect than it now has if it had simply said that no person should be imprisoned for debt. So in the attachment laws, the plaintiff is required to make affidavit, not only that the defendant is indebted, but also that the same is due upon contract express or implied, etc.''

These instances show clearly the language which is used to describe the particular class of debts founded upon contract, and as clearly imply that the word ''debt'' in its general sense is not applied to that class alone. It seems to the court that the legislature used the word. ''liability'' as distinguished from he word ''debt'' in its enlarged sense, a sense which manifestly best serves the object of the statute; to construe it otherwise would leave a numerous class of creditors unprovided for, and consequently postponed without reason, to all others.

Counsel for defendant rely upon the case of Allen v. Lewis, 30 Ohio St., 11, as most strongly supporting their view. This case is cited with approval by the court in the case of White v. Gates, 42 Ohio St., 109-112.

In the Allen case the suit was to set aside a conveyance claimed to have been made with intent to hinder, delay, and defraud creditors, and the court say: ''At the time of the execution of the conveyance which Mrs. Lewis, the plaintiff below, sought to have set aside as fraudulent and void as to creditors, she was not a creditor of the grantor, Thomas Evans. True, she had a valid cause of action against him at that time, but one sounding in tort, and which was not asserted even by bringing suit thereon, until a month or more thereafter. The existence of such a cause of action clearly does not establish the legal relation of debtor and creditor between the wrongdoer and the party injured.''

In the White case the court say: ''The fact that an action to recover damages for the tort, was then pending, makes no difference.''

The difficulty, it appears tc the court, is in the failure to keep clearly in mind the difference between a proceeding to prove a claim against the estate of an insolvent debtor who has voluntarily assigned his property to a trustee for the benefit cf all his creditors, and a proceeding to set aside a transfer, conveyance, or assignment, as made for the purpose and with intent to hinder, delay, and defraud creditors.

In the first, the debtor has voluntarily made provision to distribute his entire estate to all his creditors. In the other a different question arises. The creditor seeks the aid of the court to compel a distribution of the debtor's estate fraudulently withheld from his creditors, among all his creditors. In such case it must appear to the court that the person seeking the aid was one whose claim or demand against the grantor was in being, or determined in some form at the date of the alleged fraudulent alienation; or was one whose claim or demand came into being—was liquidated or determined at a time subsequent to to the alienation, and that the transfer was made to defraud him. The first class is called ''existing creditors,'' and the second, ''subsequent creditors.'' The rights of these two classes are manifestly and necessarily different, and depend upon different proof.

''The difference,'' Chancelor Wallworth says in Cook v. Johnson, 12 N. J. Equity, 54, ''between existing creditors or debts, and subsequent creditors, or debts, in reference to voluntary conveyances, is this: As to the former, the fraud is an inference of law; but as to the latter there must be fraud in fact. There must be intent to defraud the subsequent creditor, and this must be proved.''

And hence it was held in the case of Allen v. Lewis, 30 Ohio St., 11, and White v. Gates, 42 Ohio St., 109, that in an action to set aside a conveyance made by a person holding a judgment against the grantor recovered subsequent to the conveyance, in an action sounding in tort, on the ground that

it was made with intent to hinder, delay, and defraud creditors, must be held, under our statutes, to be a subsequent creditor, and fradulent intent must be proved. When, however, such conveyance is set aside, whether at the suit of the existing creditor, or a subsequent creditor, and the property is passed to a trustee to be administered for the benefit of creditors, under our insolvent act, all creditors, whether existing or subsequent creditors, share pro rata in the distribution of the assets.

Waite on Fraudulent Conveyances, section 104, after discussing this question, near the close of the paragraph, says: "It would seem to result, while there is a discrimination in the right to attack the conveyance, there is none as to the sharing in the successful result. It appears that this classification of existing and subsequent creditors, is made necessary under our statutes.

See sections 4196, 6343 and 6344.

This distinction is made more apparent by referring to the case of McVeigh v. Rittenour et al., 40 Ohio St., 107.

On April 8, 1871, V. R. then being liable to a suit for breach of promise to marry S. M., conveyed his house and lot without consideration to M. R., to prevent the collection of damages by S. M. Afterwards S. M. recovered a judgment against V. R. for damages for said breach of promise, on which execution was issued and levy made on said premises, which were sold, and conveyed to her by the sheriff in due form of law. She then sued M. R. for possession. The common pleas court gave judgment in her favor, but the district court reversed that judgment, because she had not first obtained a decree setting aside the deed to M. R. Held, first, S. M. was a creditor of V. R., at the time he made the deed to M. R." This case determines that one having a claim for damages growing out of a breach of promise to marry, is a creditor before judgment is recovered.

A creditor may lose his claim by failing to prove it, or to put it in shape to prove—still he is a creditor.

[COPYRIGHT, 1899, BY CARL G. JAHN.]

Lally might, by his failure to have his claim for damages liquidated until after distribution, have lost his right to share in the estate; still in the common signification of the term, he was a creditor.

I am of the opinion that had the assignee in this case proceeded to a distribution after suit was brought by Lally and before judgment, Lally could have appeared before the probate court and obtained an order from the court suspending the distribution until a determination of the action. It appears to me, although the question is not free from doubt, that the purposes and intent of the law, as well as common justice, would be best served by holding that a liability for damages, whether arising out of contract or ex delicto, existing prior to the assignment for the benefit of creditors and reduced to a judgment after the assignment, is, when so liquidated, a claim entitled to share in the distribution of the insolvent's estate.

The order will be that the assignee allow the claim.

J. A. Gilmore, and Risinger & Risinger, for Plaintiff.

J. W. King and W. A. Neal, for Defendant Farr.